## JOSEPH D. SMITH v. STATE.

223 N. W. 2d 775.

October 25, 1974—No. 44433.

456

*C. Paul Jones,* State Public Defender, and *Mark W. Peterson,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, *Walter J. Duffy, Jr.,* City Attorney, and *Allen B. Hyatt,* Assistant City Attorney, for respondent.

Heard before Sheran, C. J., and Otis, Rogosheske, Peterson, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Petitioner plead guilty to driving after revocation in violation of Minneapolis Ordinance No. 402.080 and was sentenced to $300 fine or 30 days in the Minneapolis Workhouse. After the time for payment of the fine was twice continued for a total of 2½ months, he was ordered committed. He appeals from the order of the Hennepin County District Court denying postconviction relief and ordering him committed to the Minneapolis Workhouse for the remainder of his sentence. We affirm.

Petitioner challenges his confinement on the basis that it was imposed solely because of his indigency. He had had no steady employment for 14 months prior to the hearing for postconviction relief. He was at that time 25 years old and father of two daughters in the custody of his divorced wife. During February and early March 1973, he earned $52.50 per week going to school for his G.E.D. under the Concentrated Employment Program. He was dropped from this program for absences that he at-

tributed to his wife's failure to pick up his children after they had spent the night at his residence. His only other employment during this period was for 1½ days at a lumber yard.

After his sentence petitioner lived with five younger brothers in his mother's home. He testified that he called around, looked in the papers, put in applications in several places, registered with the State Employment Bureau, and applied to Manpower in an effort to obtain employment. When asked by the court why he had not worked for over a year, he could give no explanation.

In denying petitioner's motion the district court questioned his diligence in his efforts to raise any portion of the fine and indicated as examples thereof his nearly total lack of employment for 12 months and his failure to seek help from the Municipal Court Services personnel. The district court further recommended to the sentencing court that petitioner be permitted to serve his workhouse time under the Huber Law[1] and that the Department of Court Services assist him in obtaining employment.

■ The state contends that the postconviction remedy statute[2] is not available to one convicted of a violation of a municipal ordinance. The state argues that an ordinance violation is not a crime. We do not agree. As we stated in City of St. Paul v. Whidby, 295 Minn. 129, 136, 203 N. W. 2d 823, 827 (1972):

"* * * Any citizen imprisoned for violation of a city ordinance would be incredulous if informed that he was not experiencing a criminal sanction.

"* * * The fact that certain acts are proscribed by ordinances enacted by a municipal corporation in its legislative capacity rather than by state criminal statutes makes them no less criminal in nature."

We hold that an ordinance violation, when punishment includes

---

[1] Minn. St. 631.425.

[2] Minn. St. 590.01, et seq.

confinement, is a crime for the purpose of the postconviction remedy statute.

■ Petitioner argues that his confinement was imposed because of his inability to pay his fine and is therefore an unconstitutional violation of the equal protection clause. The practice of imprisonment for nonpayment of fines has come under recent attack before the United States Supreme Court in Williams v. Illinois, 399 U. S. 235, 90 S. Ct. 2018, 26 L. ed. 2d 586 (1970) ; Morris v. Schoonfield, 399 U. S. 508, 90 S. Ct. 2232, 26 L. ed. 2d 773 (1970) ; and Tate v. Short, 401 U. S. 395, 91 S. Ct. 668, 28 L. ed. 2d 130 (1971), and in a myriad of lower Federal and state decisions.[3] It is against the background of these decisions that defendant's claim must be evaluated.

In Williams v. Illinois, *supra,* an acknowledged indigent defendant received a sentence of a year in prison, the statutory maximum, and a $500 fine. The judgment provided that should Williams default, he must remain in jail to work off his debt at a rate of $5 per day. The Supreme Court held that Williams could not be kept in prison longer than the statutory maximum simply for failing to pay his fine immediately. The scheme violated the equal protection clause because—

"* * * [T]he State has visited different consequences on two categories of persons * * *. The result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment." 399 U. S. 242, 90 S. Ct. 2023, 26 L. ed. 2d 594.

The court emphasized that Illinois could have no penal interest in incarcerating beyond the statutory maximum but rather that its purpose was to provide a coercive means to collect or work out a fine. 399 U. S. 243, 90 S. Ct. 2023, 26 L. ed. 2d 594. However, the state's interest in collecting its fines could not justify

---

[3] See, Annotation, 31 A. L. R. 3d 926, and later case service for compilation of state and Federal cases.

the disparate treatment of indigent defendants because of the numerous alternatives available for collection.

In Tate v. Short, *supra,* the court prohibited the incarceration of an indigent unable to pay the fine which was the only punishment authorized under Texas law. The court found the same unconstitutional discrimination that existed in Williams. As Texas had legislated "fines only" for traffic offenses, Tate's imprisonment served no penal purpose and was ill-suited for the purpose of collection, as it ignored alternative methods. However, the court did not restrict its opinion to the facts before it (401 U. S. 398, 91 S. Ct. 670, 28 L. ed. 2d 133):

"* * * In Morris v. Schoonfield, 399 U. S. 508, 509 (1970), four members of the Court anticipated the problem of this case and stated the view, which we now adopt, that

'the same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.' "

Although the Supreme Court has not considered a situation where the sentence is in the alternative, many of the lower Federal and state courts have. The nearly unanimous result has been to strike down statutes and procedures that permit incarceration solely because of the convicted defendant's indigency.[4]

---

[4] See, Frazier v. Jordan, 457 F. 2d 726 (5 Cir. 1972); State v. Snyder, 203 N. W. 2d 280 (Iowa 1972); Spurlock v. Noe, 467 S. W. 2d 320 (Ky. 1971); State v. Tackett, 483 P. 2d 191 (Hawaii 1971); State v. DeBonis, 58 N. J. 182, 276 A. 2d 137 (1971); Hood v. Smedley, 498 P. 2d 120 (Alaska 1972); Commonwealth ex rel. Parrish v. Cliff, 451 Pa. 427, 304 A. 2d 158 (1973); In re Collins, 108 Ariz. 310, 497 P. 2d 523 (1972); In re Antazo, 3 Cal. 3d 100, 89 Cal. Rptr. 255, 473 P. 2d 999 (1970); Rutledge v. Turner,

None of the cited decisions has reached a result that would totally bar the state from confining convicted indigent defendants. Each allows incarceration in any case where the refusal to pay a fine is the result of contumacy rather than indigency. To exonerate merely because unable to pay would be the antithesis of the equality guarantee of the equal protection clause. As the court stated in Tate (401 U. S. 400, 91 S. Ct. 672, 28 L. ed. 2d 134):

"We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so. Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means."

We believe that alternative means have been and are continuing to be employed in petitioner's benefit in satisfaction of the requirements of Tate. Two extensions totaling 2½ months were allowed for payment of the fine. The district court in denying the petition for postconviction relief recommended that the provisions of Minn. St. 631.425 that provide for assistance in attaining employment and for reduction in sentence where conduct, diligence, and attitude merit such reduction be applied to the remainder of petitioner's sentence.

■ Petitioner has also requested that we adopt certain sections of the A. B. A. Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures, regarding the imposi-

---

495 P. 2d 119 (Okla. 1972); and Re Jackson, 26 Ohio St. 2d 51, 55 Ohio Ops. 2d 45, 268 N. E. 2d 812 (1971). This list is by no means exhaustive. A series of Federal courts have held that statutes denying credit for time spent in jail prior to convictions because of financial inability to make bail discriminates against the poor and violates their right to equal protection. White v. Gilligan, 351 F. Supp. 1012 (S. D. Ohio 1972). In accord: Wright v. Maryland, 429 F. 2d 1101 (4 Cir. 1970); and Stapf v. United States, 125 U. S. App. D. C. 100, 367 F. 2d 326 (1966).

tion of fines[5] and the procedure upon failure to pay an imposed fine.[6] We defer consideration of petitioner's recommendation to

[5] Sections 2.7(b) and (c) provide as follows: "(b) Whether to impose a fine in a particular case, its amount up to the authorized maximum, and the method of payment should remain within the discretion of the sentencing court. The court should be explicitly authorized to permit installment payments of any imposed fine, on conditions tailored to the means of the particular offender.

"(c) In determining whether to impose a fine and its amount, the court should consider:

"(i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;

"(ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;

"(iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and

"(iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant."

[6] Sections 6.5(a), (b), and (c) provide as follows: "(a) The sentencing court should have the power at any time to revoke or remit a fine or any unpaid portion, or to modify the terms and conditions of payment. When failure to pay a fine is excusable, such authority should be exercised.

"(b) Incarceration should not automatically follow the nonpayment of a fine. Incarceration should be employed only after the court has examined the reasons for nonpayment. It is unsound for the length of a jail sentence imposed for nonpayment to be inflexibly tied, by practice or by statutory formula, to a specified dollar equation. The court should be authorized to impose a jail term or a sentence to partial confinement (section 2.3) for nonpayment, however, within a range fixed by the legislature for the amount involved, but in no event to exceed one year. Service of such a term should discharge the obligation to pay the fine, and payment at any time during its service should result in the release of the offender.

"(c) The methods available for collection of a civil judgment for money should also be available for the collection of a fine, and should be employed in cases where the court so specifies."

Petitioner would substitute for the last sentence of paragraph (a) the

the Advisory Committee which is currently studying the promulgation of rules of procedure for misdemeanors.

Affirmed.

following: "This section shall not be available if the court determines that the defendant's efforts to pay the fine have not been diligent. The defendant will be presumed diligent in his efforts to pay the fine unless (1) the defendant is informed at the time of sentencing that, should he fail to pay the fine, he will be required to show that his efforts to pay have been diligent, and (2) the court specifically informs the defendant what efforts he must make to show the court his diligence."