323 So.2d 539 (1975)
Micky Carl NELSON, a minor, by his mother and next friend
v.
Lavell TULLOS and James L. Spencer.
No. 48800.
Supreme Court of Mississippi.
December 8, 1975.
*541 Joe M. Ragland, Jackson, for appellant.
W.E. Gore, Jr., Robert G. Nichols, Jr., G. Garland Lyell, III, Jackson, for appellees.
Before RODGERS, PATTERSON and SUGG, JJ.
*542 SUGG, Justice:
This is an appeal from an order of the County Court of the First Judicial District of Hinds County denying a petition for writ of habeas corpus filed on behalf of Micky Carl Nelson, a minor, by Margie Nelson, his mother. The issue is whether the imprisonment of the minor for failure to satisfy his traffic fines denied him equal protection of the laws guaranteed by the Fourteenth Amendment to the U.S. Constitution. Secondary questions involve the legality of imprisoning a minor with adult offenders and the right to court-appointed counsel where there is a possibility that an indigent's conviction may result in imprisonment.
On February 15, 1975, Micky Carl Nelson, a 17-year-old child, was ticketed by officers of the Jackson Police Department for leaving the scene of an accident, failure to keep his vehicle under control and driving without a license. All of these offenses were punishable under an alternative sentencing ordinance by a fine, jail sentence or both. When petitioner failed to appear at a court hearing scheduled for February 21, 1975, a bench warrant issued for his arrest. Petitioner was arrested on February 22, 1975, and taken before a Jackson traffic court. The police justice knew that petitioner was an indigent minor and considered appointing counsel for him, but then decided to impose only a fine thus obviating the need for counsel. Petitioner pleaded guilty and was fined $250. While questioning petitioner about his ability to pay the fine, the court was informed of petitioner's past traffic offenses, his tardiness in paying the fines from those offenses, and the existence of three delinquent fines from a previous conviction.
A review of petitioner's driving record showed that between November 1971 and March 1974 he had been convicted of and fined for eight traffic offenses. The court's investigation revealed that although these fines were ultimately paid, petitioner had been arrested on two separate occasions for failure to satisfy the fines after a reasonable period of time. Further investigation disclosed that on August 3, 1974, petitioner was fined $225 by a Jackson traffic court for three offenses committed during June and July of 1974. At the time of the February 22, 1975, court appearance these fines remained unpaid.
After reviewing these facts, it was the court's opinion that petitioner's failure to pay the fines was not due to his indigency but to indifference and disregard for law enforcement. The court told the petitioner that he would not be given an opportunity to pay any of the fines in installments because that opportunity had been afforded him in the past. Petitioner was ordered incarcerated in the Jackson city jail to work off the fines totalling $475 at the rate of $3 per day.
On April 2, 1975, petitioner filed a petition for writ of habeas corpus in the County Court of the First Judicial District of Hinds County. The petitioner set forth the fact of his imprisonment, alleged that he was confined because of his inability to pay his traffic fines, and contended that such confinement violated the Eighth and Fourteenth Amendments to the U.S. Constitution. After a hearing, the court denied the petition on the ground petitioner's past conduct indicated that he would be a "bad risk" with regard to the payment of his traffic fines on an installment basis.
Once again this Court must address itself to the misconceived function of the writ of habeas corpus in this state. Unlike the boundless federal habeas corpus, the writ of habeas corpus in Mississippi is narrow in its scope and applicability. See Keller v. Romero, 303 So.2d 481, 483-84 (Miss. 1974). In this state a writ of habeas corpus has the principal function of testing the legality of a petitioner's detention prior to his conviction. Habeas corpus may be utilized as a post-conviction remedy to release a petitioner from imprisonment only where the petitioner was convicted under an invalid statute or by a court lacking jurisdiction. *543 Keller v. Romero, supra at 482; State v. Ridinger, 279 So.2d 618, 619 (Miss. 1973); Young v. State, 264 So.2d 821, 823 (Miss. 1972); Ledbetter v. Bishop, 210 So.2d 880, 882 (Miss. 1968); Allred v. State, 187 So.2d 28, 30-31 (Miss. 1966); Mississippi Code Annotated section 11-43-3 (1972). See also "1965-66 Mississippi Supreme Court Term  Some Significant Cases," 38 Miss.L.J. 1, 11 (1966).
In this jurisdiction relief for a defendant who claims to have been convicted as the result of a deprivation of his constitutional rights is by writ of error coram nobis. As this Court pointed out in Botts v. State, 210 So.2d 777 (Miss. 1968):
The function of a writ of error coram nobis is to bring to the court's attention some matter or fact which does not appear on the face of the record which was unknown to the court or the parties at the time, and which, if known, and properly presented, would have prevented the rendition of the original judgment. The violation of defendant's constitutional right to be represented by counsel constitutes ground for granting a writ of error coram nobis to correct a former judgment. 18 Am.Jur.2d Coram Nobis § 17 (1965). (210 So.2d at 779).
Accord Clayton v. State, 254 So.2d 874, 875 (Miss. 1971); Allred v. State, supra at 30.
We have held, however, that where a petition is filed seeking post-conviction relief the court should look through the form and to the substance of the petition. Where a case for relief under a writ of error coram nobis is stated the court should treat it accordingly. Young v. State, supra at 823; Allred v. State, supra at 32. Because the instant petition falls within the Young rule, we treat the proceeding as an appeal from a denial of a petition for writ of error coram nobis. This is not to be construed as an abrogation of the rule that habeas corpus does not lie as a general post-conviction remedy in Mississippi. The Young pronouncement is grounded in equitable considerations and should not become the target of abuse by members of the bar. One purpose for requiring the proper denomination of pleadings is to apprise the respective parties as well as the court of the nature of the suit presented and the relief sought.
Coming then to the constitutional question presented, we hold that the imprisonment of the petitioner denied him the equal protection of the laws guaranteed by the Fourteenth Amendment to the U.S. Constitution and violated the directive laid down in Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), pertaining to imprisonment of an indigent for inability to pay a fine.
Tate held that an indigent may not be jailed because of his inability to make immediate payment of a fine under a fines only statute. This rule applies with equal force where the statute authorizes a fine, imprisonment or both, and the imprisonment does not exceed the statutory maximum sentence. 401 U.S. at 398, 91 S.Ct. at 670-71, 28 L.Ed.2d at 133. The procedure condemned as constitutionally deficient in Tate is the same procedure that was followed in the lower court as to the $250 fine of February 22, 1975. We hold, therefore, that a court may not first fine a defendant and then, because of his indigency, convert the fine into a jail sentence for failure of the defendant to make immediate payment. Reasonable alternatives to incarceration must first be resorted to in an attempt to afford the indigent an opportunity to satisfy his fine. For some suggested alternatives see Tate v. Short, supra at 400 n. 5, 91 S.Ct. 668; Williams v. Illinois, 399 U.S. 235, 244-45 n. 21, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1969); Note, 44 Miss.L.J. 556, 559 (1973). This is not to say that an indigent defendant may never be imprisoned for his inability to satisfy his fine in spite of a good faith effort to pay the fine. Indeed, Tate left open the possibility that imprisonment may *544 sometimes be the only "enforcement method" available to a court:
We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so. Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case. (401 U.S. at 400-401, 91 S.Ct. at 672).
See Smith v. State, 223 N.W.2d 775 (Minn. 1974), affirming the imprisonment of an indigent convicted of a traffic offense where the defendant defaulted in the payment of his fine after being given a reasonable period of time in which to satisfy the fine.
Certainly, we do not take lightly the imprisonment of an indigent for inability to pay his fine. Admittedly, it smacks somewhat of the discarded practice of imprisoning one who is unable to pay his debts. However, when faced with a habitual offender or recalcitrant defendant who is without resources to pay yet evinces a callous disregard for law enforcement, imprisonment may often be the only enforcement method left.
In ordering that petitioner be released and given a reasonable opportunity to satisfy his fines, we are not unmindful of the fact that petitioner was delinquent in the payment of his August 1974 fines of $225, and exhibited no good faith efforts to satisfy these fines prior to his incarceration. However, as the case must be remanded as to one of the fines, we feel that the interests of justice are best served by first affording petitioner an opportunity to satisfy all of his fines before resorting to imprisonment.
Petitioner's next contention is that his imprisonment in the city jail with adult offenders is contrary to state law and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. Article X, Section 225 of the Mississippi Constitution provides in part that "[The legislature] may ... provide for keeping of juvenile offenders from association with hardened criminals." To an extent, this invitation has been accepted. Mississippi Code Annotated section 43-21-13 (1972) provides in part:
No child shall be placed in or committed to any jail or other place of detention of adults unless, in the opinion of the court, he be a child whose habits or conduct are deemed such as to constitute a menace to other persons, or it is necessary to insure the attendance of such child at court; but he shall not be placed in a room or ward with adults. Any county or municipality may separately or jointly establish and maintain a suitable detention home or detention room for children awaiting hearings under the provisions of this chapter; for said purpose the county or municipality may acquire the necessary land by purchase or donation, and may expend the necessary funds out of its general fund to build and maintain same.
Regretfully, this section is not of general applicability, but is limited to children whose cases are in youth court.
Mississippi Code Annotated section 43-21-33, as amended (Supp. 1975), provides that:
In cases where the child is charged with a traffic violation, whether the same be a state law or a municipal ordinance, the justice of the peace court or the municipal court, as the case may be, may proceed to dispose of the same in the same manner as for other offenders and it shall not be necessary to transfer the case to the youth court of the county.
*545 By providing that a municipal court or justice of the peace court may exercise jurisdiction over a youthful traffic offender and dispose of the case "in the same manner as for other offenders" without first consulting the youth court, the legislature has given these courts the concomitant powers to pronounce judgment and execute that judgment upon the child. The only limitation placed directly upon the power of execution is the directive that the youth court "shall have full power to stay the execution of such sentence... ." Id. In this case no such relief was sought from the youth court.
We hold, therefore, that a municipal court or justice of the peace court may sentence a child convicted of a traffic offense to imprisonment in a facility with adults in either of two contingencies: (1) where a child is sentenced to imprisonment under a statute authorizing a jail sentence upon conviction, or (2) where a child, originally fined under an alternative sentencing statute, defaults in the payment of the fine after the failure of reasonable methods designed to aid the child in the payment of the fine. We further hold that such imprisonment does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. It is a sentence within the limits of the statute. Clanton v. State, 279 So.2d 599, 602 (Miss. 1973), and cases cited therein.
We emphasize that our holding does not mandate that a youthful traffic offender who is sentenced to jail must be imprisoned with adults. We hold only that such imprisonment is permitted by the statute. In those localities where separate juvenile detention facilities are available, the court is free to choose such a facility. The more viable solution to the problem, of course, is for the legislature to accept the invitation of Article X, § 225 of the Mississippi Constitution and provide that youthful offenders and adults be incarcerated in separate facilities.
Petitioner's final contention is that he was denied his Sixth Amendment right to counsel because the trial court failed to advise him of the right or to appoint him counsel prior to his trial. Argersinger v. Hamlin, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972) held that:
[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.
Under Argersinger it is the imprisonment and not the conviction that is vitiated by the uncounseled misdemeanor conviction. The conviction itself survives. Morgan v. Juvenile & Domestic Relations Court, 491 F.2d 456, 457 (4th Cir.1974); State v. Love, 312 So.2d 675, 678 (La. App. 1975); Whorley v. Commonwealth, 215 Va. 740, 214 S.E.2d 447, 450 (1975).
A number of jurisdictions have interpreted Argersinger as forbidding any imprisonment resulting from either the direct or collateral consequences of an uncounseled misdemeanor conviction. Morgan v. Juvenile & Domestic Relations Court, supra; Cottle v. Wainwright, 493 F.2d 397, 399 (5th Cir.1973); Marston v. Oliver, 485 F.2d 705, 707-08 (4th Cir.1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); State v. Guillote, 297 So.2d 423 (La. 1974); Whorley v. Commonwealth, supra. However, Florida has held that where an uncounseled misdemeanant is sentenced to a fine with the condition that default will result in imprisonment, any loss of liberty resulting from default involves only Tate v. Short considerations, and not Argersinger. The rationale is that the imprisonment is for failure to comply with the original sentence (a fine) and is, therefore, tantamount to imprisonment for civil contempt. Rollins v. State, 299 So.2d 586 (Fla. 1974), cert. denied, 419 U.S. 1009, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). We feel that the correct answer to the imprisonment of an uncounseled misdemeanant for failure to pay a fine lies somewhere between these *546 two extremes and involves both Tate and Argersinger considerations. See generally State v. Sanchez, 110 Ariz. 503, 516 P.2d 1226, 1229-30 (1973), holding that imprisonment may follow upon conviction of driving after revocation of license even though the revocation was based upon a prior uncounseled misdemeanor conviction; State v. Love, supra at 678-79 holding that an uncounseled misdemeanor conviction may be used as the basis for a habitual offender declaration even though the declaration may possibly lead to imprisonment at some future date.
At the outset, we note that the local courts are literally inundated by a never-ending flood of traffic tickets for violations ranging from overtime parking to no inspection sticker to drunken driving. Most of these offenses, if not all, are punishable by a fine, imprisonment, or both. Because the usual sentence meted out is only a fine, local courts rarely, if ever, appoint counsel to represent a traffic offender where the usual punishment is a fine only. In accordance with the requirements of Argersinger, most judges review the charges pending against the offender and decide to impose only a fine, thus obviating the need for counsel. Under Tate, if the defendant is not able to make immediate payment of the fine, the court must resort to reasonable alternatives designed to aid the defendant in paying the fine. It is only after the failure of these alternatives that an indigent may be jailed for non-payment of his fine. But, if the defendant was not represented by counsel when the fine was first imposed, does Argersinger direct that he may never be imprisoned as a collateral consequence of a conviction without counsel? We think not. In considering this admittedly difficult problem we have been guided by Mr. Justice Powell's prescient discussion in Argersinger of the effect that such an inflexible rule would have on the criminal justice system.
We hold, therefore, that in any case in which a court desires to preserve its discretion to impose a jail sentence as a direct result of a conviction of an indigent misdemeanant under an alternative sentencing statute, the court must make such a decision before the accused formally pleads and, in the absence of a valid waiver, appoint counsel to represent the indigent. If, however, a court decides that only a fine will be imposed in the event of conviction, the court need not appoint counsel for the indigent. Deaton v. State, 227 So.2d 827 (Miss. 1969) is modified to the extent it conflicts with this holding. Such a decision should then be dictated into the record or otherwise preserved for appellate purposes. We hold that there will be no violation of the indigent's Sixth Amendment right to counsel under Argersinger if such a fine is later converted into a jail sentence because of the defendant's failure to pay the fine after reasonable measures designed to aid payment prove unsuccessful. Such imprisonment may not exceed the maximum imprisonment authorized by the statute under which the defendant was convicted. McKinney v. State, 260 So.2d 444 (Miss. 1972).
In holding that there is no absolute right to court-appointed counsel in a misdemeanor case where only a fine is levied, we do not preclude the appointment of counsel if in the opinion of the trial judge, because of the gravity of the offense, the age of the defendant, or other factors, fundamental fairness necessitates the appointment of counsel.
It follows therefore that the trial court's failure to appoint counsel for the petitioner invalidated only his imprisonment and not his conviction. Petitioner will be released and alternative procedures ordered in an effort to permit him to pay his fines.
Petition for writ of error coram nobis granted and case remanded for proceedings consistent with this opinion.
GILLESPIE, C.J., and INZER, SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.