# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00950-COA

**CAMERON HARRIS**                                                    **APPELLANT**

**v.**

**TRAVIS PATTEN, SHERIFF OF ADAMS**                          **APPELLEE**
**COUNTY, MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2023 |
| TRIAL JUDGE: | HON. CARMEN BROOKS DRAKE |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EVERETT T. SANDERS |
| | AISHA ARLENE SANDERS |
| ATTORNEY FOR APPELLEE: | MATTHEW PAUL KIDDER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 11/26/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Cameron Harris has been held in jail on an attempted murder charge for seventeen months without an indictment. The only record evidence connecting him to the crime is hearsay testimony that an unnamed witness saw Harris running near the crime scene after the crime was committed. Harris filed a petition for a writ of habeas corpus, arguing that there was insufficient evidence to hold him, but the circuit court denied his petition. It is unclear whether the circuit court denied the petition (a) simply because a justice court judge had already bound Harris over to the grand jury or (b) because the circuit court found that the evidence established probable cause to believe Harris had committed the crime. Either way, the circuit court erred. For the reasons explained below, we reverse the circuit court's

decision and remand the case for a new habeas corpus hearing.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 26, 2023, Cameron Harris was arrested for attempted murder. Following a preliminary hearing on July 11, 2023, a justice court judge entered a Bind Over Order that stated, "This case is hereby ordered bound overt [sic] to the action of the next grand jury for Adams County on the charge of possession of a weapon by a convicted felon . . . ." *See* MRCrP 6.2(f). This is the only mention in the record of a weapons charge. The justice court's order did not mention the attempted murder charge. Bond was set at $500,000.[1]

¶3.     On July 14, 2023, Harris filed a petition for a writ of habeas corpus in the Adams County Circuit Court. *See* Miss. Code Ann. §§ 11-43-1, -7, -9 (Rev. 2019); UCRCCC 2.07(A)(1), (4)-(5). Harris alleged, inter alia, that his arrest and detention were unlawful because "there existed no evidence connecting him to the [attempted murder]." The district attorney filed a response on behalf of the Adams County sheriff denying Harris's allegations. *See* Miss. Code Ann. § 11-43-29 (Rev. 2019); UCRCCC 2.07(A)(5)-(7).

¶4.     The circuit court held a hearing on Harris's petition on July 24, 2023. Investigator Priester Byrne of the Adams County Sheriff's Office testified that he signed an affidavit alleging that Harris had committed the attempted murder based on information he received from an unnamed witness. However, on cross-examination, Byrne acknowledged that the witness did not actually observe the crime. Rather, the witness claimed that after shots were fired, he saw Harris running down the street behind the house where the shooting occurred.

---

[1] The circuit court later reduced Harris's bond to $300,000 before he appealed.

Byrne did not know where the witness was standing at the time or how the witness knew or recognized Harris. Byrne testified that he also "collected shell casings" at the crime scene, which he "sent . . . to the crime lab," and "test fired [a] weapon . . . taken from . . . Harris at the time of his arrest." However, he had not received the results of any ballistics tests.[2] The circuit judge eventually ended Harris's cross-examination of Byrne after the State objected (1) that Byrne's answers might reveal the identity of the witness, who allegedly feared retaliation, and (2) that Harris was not entitled to pre-indictment "discovery."

¶5.     Harris's attorney argued that Byrne's testimony was insufficient to hold Harris. But the circuit judge stated, "[The justice court] found that probable cause existed and bound the matter over. The burden had been met. . . . [T]his is how our system is set up. This is what happens with every defendant. . . . [Y]ou can't just . . . file a habeas and make an end run around the rules." The judge also stated, "It was enough for the Justice Court. . . . [T]he next check is the grand jury. That's the next check. It's not me in habeas."

¶6.     Later, the circuit judge stated that she was "satisfied . . . that the State ha[d] provided sufficient evidence to prove that it [was] not unlawfully detaining . . . Harris." The judge further stated that the habeas corpus "hearing [was] over" because she had "heard enough already from Priester to satisfy [her] that [Harris was] not being held unlawfully." On July 26, 2023, the judge entered a written order denying Harris's habeas corpus petition and

---

[2] In a subsequent order denying Harris's request to reduce his bond, the circuit court stated, "While the Court is aware that the Mississippi Crime Lab is significantly backlogged with some testing expected to take years, the length of pre-trial incarceration is not one of the factors listed in Rule 8.2 [of the Mississippi Rules of Criminal Procedure regarding conditions of pretrial release]."

finding that there were "sufficient facts to establish probable cause."

¶7.     Harris filed a notice of appeal. Harris remains in custody without an indictment.[3]

## ANALYSIS

¶8.     It is not entirely clear whether the circuit court denied Harris's habeas corpus petition (a) because the court believed it lacked the power to make a probable-cause determination after the justice court had already bound Harris over to the grand jury or (b) because the court found that probable cause existed. Either way, based on the evidence presented at Harris's habeas corpus hearing, the circuit court erred.

¶9.     "The writ of habeas corpus shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty . . . ." Miss. Code Ann. § 11-43-1; *accord* UCRCCC 2.07(A)(1). After a hearing, the habeas corpus court shall discharge a prisoner whose detention is illegal. Miss. Code Ann. § 11-43-33 (Rev. 2019); UCRCCC 2.07(A)(9). "[A] writ of habeas corpus has the principal function of testing the legality of a petitioner's detention prior to his conviction." *Nelson v. Tullos*, 323 So. 2d 539, 542 (Miss. 1975); *see also Keller v. Romero*, 303 So. 2d 481, 482 (Miss. 1974) ("The function of the habeas corpus court in Mississippi . . . is to release a prisoner who is being unlawfully held . . . ."). The right of habeas corpus is a constitutional "privilege." Miss. Const. art. 3, § 21.

¶10.    In *Ex Parte Oliver*, 127 Miss. 208, 89 So. 915 (1921), Oliver was arrested on an affidavit charging him with burglary and larceny and held on a bond set by a justice of the

---

[3] After Harris filed his notice of appeal, the circuit court reduced his bond to $250,000 and later to $200,000, but he has been unable to obtain a bond. On October 30, 2024, in response to an order entered by this Court, Harris and the district attorney jointly advised the Court that Harris remains in custody without an indictment.

peace. *Id.* at 212-13, 89 So. at 915-16. Oliver waived a preliminary hearing before the

justice of the peace, *id.* at 209-11, 213, 89 So. at 916,[4] but then petitioned for a writ of habeas

corpus in circuit court, arguing that there was no probable cause to believe he had committed

a crime, *id.* at 212, 89 So. at 915. The circuit court denied habeas relief and "refused to hear

[Oliver] on the merits or to hear evidence as to the guilt or innocence of the charge." *Id.* at

213, 89 So. at 916. The Mississippi Supreme Court reversed and remanded, holding:

> [T]he [circuit] court was in error in refusing to hear [Oliver] on the merits of
> the charge. There had been no indictment found against [Oliver] by the grand
> jury and the jurisdiction of the justice of the peace extended only to
> determining whether there was proper cause for an indictment or proper
> evidence of guilt. *The judgment of the justice of the peace was not conclusive
> upon this point.* He had no jurisdiction to try the case upon its merits so as to
> convict or discharge, and [Oliver] could not be tried for a crime until the grand
> jury indicted him. *The habeas corpus court had a right to inquire into the guilt
> or the innocence of [Oliver] for the purpose of determining whether there was
> sufficient evidence to warrant his detention, and he had the power to discharge
> [Oliver] if the evidence was insufficient, provided no indictment had been
> returned by the grand jury.* He was not bound by the judgment of the justice
> of the peace.

*Id.* at 214-15, 89 So. at 916 (emphasis added). The "*Syllabus by the Court*" clearly

summarized the Court's holdings:

> Where a person sues out a writ of habeas corpus to procure his discharge on
> a detention alleged to be unlawful before his indictment, the habeas corpus
> court has the power, and it is its duty, to hear the evidence on the question as
> to whether the [prisoner] is probably guilty of a crime . . . .
>
> [I]f the evidence is insufficient to show probable guilt[, the habeas corpus
> court] may and should discharge the prisoner even though a justice of the
> peace, sitting as a conservator of the peace, has required bail.
>
> The habeas corpus court is not bound by the judgment of the justice of the

---

[4] The opinion does not explain why Oliver waived a preliminary hearing.

peace.

> If the defendant is indicted but not tried, the habeas corpus court is limited to allowing reasonable bail.

*Id.* at 208, 89 So. at 915 (breaks added). Thus, a habeas corpus court clearly has the duty to determine if there is probable cause to believe the prisoner committed a crime, and the habeas corpus court is not bound by the prior judgment of a lower court. *Id.*

¶11. Significantly, in *Oliver*, the State expressly "concede[d]" that "[i]f [a] preliminary [hearing] is actually [held], . . . the person bound over has a right to sue out a writ of habeas corpus, if he does not agree with the justice of the peace." *Id.* at 210. The State only argued that Oliver had waived his right to contest probable cause by waiving a preliminary hearing before the justice of the peace. *Id.* at 209-11. Thus, the State conceded that in a case like this one—where a preliminary hearing was actually held—a habeas corpus petition would be a proper vehicle for challenging probable cause.

¶12. More recent cases seem to acknowledge the same point. In *Smith v. Banks*, 134 So. 3d 718 (Miss. 2014), after a man was arrested for capital murder and additional charges, the county court found probable cause to bind him over to the grand jury. *Id.* at 717 (¶3). The prisoner then filed a petition for habeas corpus on the ground that "the State's allegations against him did not state a valid charge for capital murder," but the grand jury indicted him on all charges before his habeas corpus hearing was held. *Id.* at 717-18 (¶¶4-5). On appeal, the Mississippi Supreme Court stated,

> We must first note that the habeas corpus court was without authority to discharge Smith for his capital-murder charge. *After a defendant in a criminal case has been indicted, as here, the habeas corpus court has no power to*

6

> *discharge the defendant, but is limited to granting bail.* We therefore can view Smith's habeas corpus petition only as a request for bail . . . .

*Id.* at 719 (¶10) (emphasis added) (citation omitted). Consistent with *Oliver*, this passage suggests that *prior to an indictment*, the habeas corpus court has the power to discharge the defendant from custody notwithstanding a lower court's finding of probable cause.

¶13. In *Benson v. State*, 551 So. 2d 188 (Miss. 1989), the defendant moved to quash his indictment on the ground that the arrest warrant and bind-over order finding probable cause were both invalid. *Id.* at 194. The circuit court denied the motion, stating in part that if the defendant "was being wrongfully held after his preliminary hearing while he awaited the action of the Grand Jury, *his obvious remedy to rectify that wrong would have been the filing of a writ of habeas corpus*, but that an error on the Justice Court level holding someone in custody, even though wrongfully, would not preclude the Grand Jury from . . . indict[ing] him on the proper charges." *Id.* (emphasis added). The Supreme Court affirmed, stating that the circuit court's "statement was clearly correct." *Id.*

¶14. As relevant to this case, *Oliver* holds that a prisoner held without an indictment may file a habeas corpus petition challenging the existence of probable cause; that the habeas corpus court has a *duty* to hear and consider evidence on that issue; and that if the evidence fails to show probable cause to believe the prisoner committed the offense, the habeas corpus court must order his discharge. *Oliver*, 127 Miss. at 208, 214-15, 89 So. at 915-16.

¶15. But in this case, the circuit judge limited Harris's ability to challenge the existence of probable cause by limiting his cross-examination of Byrne. Moreover, the circuit judge made statements suggesting that she did not make her own probable-cause determination. Rather,

7

the circuit judge may have believed, in error, that she could not address that issue because the justice court judge had already found probable cause to hold Harris. Because the circuit judge did not afford Harris a full habeas corpus hearing on the issue of probable cause, we reverse and remand the case for a new hearing.

¶16. Moreover, even if the circuit judge did find that probable cause existed, that finding cannot be affirmed on the present record. A person cannot be held without an indictment unless the State presents enough evidence to establish probable cause to believe that a crime has been committed and that the person committed it. *Mayfield v. State*, 612 So. 2d 1120, 1129 (Miss. 1992). Here, all that can be discerned from the record evidence is that an unnamed witness allegedly saw Harris running down the street behind the house where a shooting occurred sometime after the shooting. The record discloses nothing else regarding the unnamed witness's alleged identification of Harris. Mere evidence that a person was seen in the vicinity of a crime is obviously insufficient to establish probable cause that the person committed the crime. Therefore, the circuit judge's decision must be reversed for this reason as well. On remand, the circuit court should determine whether probable cause exists after considering whatever additional evidence the State can present to show that Harris committed this crime.

## CONCLUSION

¶17. Prior to indictment by a grand jury, a habeas corpus court has a duty to determine whether there is probable cause to believe the petitioner committed the offense for which he is held. Moreover, a justice court's prior finding of probable cause is not conclusive. If the

8

evidence is insufficient to establish probable cause, the habeas corpus court must order the petitioner to be released. *Oliver*, 127 Miss. at 208, 214-15, 89 So. at 915-16. Here, it is not clear that the circuit court appreciated that it was authorized—and, indeed, had a duty—to make an independent probable-cause determination. In addition, the present record simply does not establish probable cause to believe that Harris committed any offense. Accordingly, we reverse the judgment of the circuit court and remand the case for a new habeas corpus hearing. Because Harris has now been held for seventeen months without an indictment, a new habeas corpus hearing should be held *without delay*.[5]

¶18.   **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.   SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND LAWRENCE, J.   McDONALD, J., NOT PARTICIPATING.**

---

[5] Discovery in criminal proceedings is governed by the Mississippi Rules of Criminal Procedure, which require the prosecution to make extensive disclosures to the defendant after indictment. MRCrP 17.2. In contrast, in a civil habeas corpus proceeding, a party is "entitled to invoke the processes of discovery available under the Mississippi Rules of Civil Procedure, *if and to the extent that the court, in the exercise of its discretion and for good cause shown, grants leave to do so, but not otherwise*." UCRCCC 2.07(A)(8) (emphasis added). Thus, in a civil habeas corpus proceeding, discovery is available only at the court's discretion, and the court may prohibit open-ended, pre-indictment discovery that exceeds what is necessary for a probable-cause determination. Moreover, the only issues properly before the habeas corpus court are whether the prisoner "is being unlawfully held" or has been denied reasonable bail. *Keller*, 303 So. 2d at 482. All other issues must "be determined by the trial court that has jurisdiction to try the charge against the prisoner, and not the habeas corpus court." *Id.* Therefore, the habeas corpus court can limit the hearing to the issues properly before the court and exclude evidence that is not relevant to those issues. In addition, the habeas corpus court may summarily deny relief without a hearing if "it is manifest [from the showing made by the petition] that the [petitioner] is not entitled to any relief." UCRCCC 2.07(A)(6)(c). Here, however, the petition stated a claim for relief, and the present record does not establish probable cause.

9

**SMITH, J., DISSENTING:**

¶19.    In the modern Mississippi state court system, the purpose and function of the writ of habeas corpus is "narrow in its scope and applicability," unlike the "boundless" federal habeas corpus. *Bateman v. State*, 267 So. 3d 793, 796-97 (¶10) (Miss. Ct. App. 2018) (citing *Nelson v. Tullos*, 323 So. 2d 539, 542 (Miss. 1975)). The scope of habeas corpus in our state court simply tests "the legality of a petitioner's detention prior to conviction." *Id*. Given these narrow parameters, I respectfully dissent from the majority's decision to reverse the circuit court's judgment upholding the lawfulness of Harris's detention on the charge of attempted murder pending a determination by an Adams County grand jury.

¶20.    In Harris's primary assignment of error, he focuses on the circuit court's limitation of his cross-examination of the investigator called by the State during the habeas hearing.[6] "The function of the habeas corpus court in Mississippi in criminal cases is to release a prisoner who is being unlawfully held or to grant him a bail bond which he can make." *Smith v. Banks*, 134 So. 3d 715, 719 (¶9) (Miss. 2014) (quoting *Keller v. Romero*, 303 So. 2d 481, 483 (Miss. 1974)). "The rule is that the judgment of the trial court which heard the habeas corpus proceeding is presumptively correct, and, where the evidence is conflicting, the judge's finding of fact, if supported by the evidence, will not be disturbed on appeal." *Id*. at 718-19 (¶8) (Miss. 2014) (quoting *Lee v. Hudson*, 165 Miss. 756, 144 So. 240, 240 (1932)).

---

[6] Harris also asserts the circuit court erred by failing to reduce his $500,000 bond and not allowing him to present evidence as it relates to the excessive bond. However, my review of the record does not reflect a limitation of his ability to present evidence as to the amount of his bond. Further, as the majority confirms, his bond was in fact reduced multiple times prior to his appeal. A review of the record clearly refutes Harris's allegation that the circuit court failed to reduce his bond.

"[T]he judgment of a habeas corpus court will not be disturbed, unless it is manifest to us that the trial court either tried the cause upon an erroneous conception of the law, or that the judgment is erroneous upon the facts." *Id*. (citing *Parker v. Tullos*, 150 Miss. 680, 116 So. 531, 532 (1928)).

¶21.    During his cross-examination of the State's witness, Priester Byrne, an investigator with the Adams County Sheriff's Office, Harris attempted to develop a line of questioning about the underlying facts that were presented to the judge who signed the arrest warrant. On appeal, Harris alleges that he was challenging the validity of the arrest warrant and that the circuit court broadly "prevented appellant Harris from presenting evidence regarding the facts of the criminal matter he was charged with." However, a closer examination of the transcript contained within the record on appeal reveals a much narrower limitation by the court.  After allowing some leeway in the initial cross-examination of the investigator, the circuit court sustained the objection of the State and opined that the testimony Harris was attempting to elicit was a "fishing expedition" to obtain discovery prior to an indictment. More specifically, the circuit court limited a line of questioning that the judge concluded probed into identifying information about an alleged witness in the attempted murder case, whom Byrne testified was in fear for his life. "While defense counsel has wide latitude in cross-examination, 'the trial court in its discretion has the inherent power to limit cross-examination to relevant matters.'" *Davis v. State*, 351 So. 3d 978, 981 (¶11) (Miss. Ct. App. 2022) (quoting *Farmer v. State*, 301 So. 3d 731, 734 (¶12) (Miss. Ct. App. 2020)); *see id*. ("M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is

relevant." (quoting *Mitchell v. State*, 792 So. 2d 192, 217 (¶97) (Miss. 2001)). We review a circuit court's limitation of cross-examination due to relevancy for an abuse of discretion. *Id*. (citing *Zoerner v. State*, 725 So. 2d 811, 813 (¶7) (Miss. 1998)).

¶22.    As a backdrop for my review of whether the circuit court abused its discretion in limiting this line of cross-examination, I am again mindful that in Mississippi, the writ of habeas corpus is "narrow in its scope and applicability." *Bateman*, 267 So. 3d at 796-97 (¶10) (citing *Nelson*, 323 So. 2d at 542). After hearing lengthy arguments from both sides, the circuit court limited this line of cross-examination based on two grounds. First, the court concluded that Harris was attempting to circumvent the rules of discovery prior to an indictment. Further, the court opined that Harris essentially sought a second bite at a preliminary hearing after he was bound over to the grand jury following his first probable cause hearing. In fact, the record in the case before us reflects that prior to his habeas petition, he did not waive his right to a preliminary hearing before a judge, and he received a hearing while represented by his attorney with witness testimony, including cross-examination of the same investigator. That court found there was sufficient evidence to bind his case over to a grand jury.[7] Alluding to the narrowness of the scope of this type of proceeding, our Supreme Court previously stated that "a habeas corpus proceeding *has but one purpose*, that is to set at liberty persons illegally held, by entering an order discharging the prisoner, granting bail, or for the purpose of delivering a child to the rightful custody of

---

[7] The modern requirements of a preliminary hearing where a defendant is charged with a felony were previously outlined in Rule 1.07 of the Mississippi Uniform Rules of Circuit  and County Court Practice. More recently, they are provided for in Rule 6 of the Mississippi Rules of Criminal Procedure, which were adopted in July 2017.

persons who are properly entitled to the care and custody of the child." *State v. Ridinger*, 279 So. 2d 618, 619 (Miss. 1973) (emphasis added). Harris argues that his case is similar to *Smith v. Banks*, in which the Supreme Court found that the petitioner was entitled to present witnesses and other evidence for the purpose of proving that he was wrongly denied bail. *Smith*, 134 So. 3d at 719 (¶12). However, in the case before us, the record does not show Harris was not allowed the opportunity to call witnesses but, instead, was only limited in expanding his examination of one State witness. Given such parameters, I would not find that the circuit court abused its discretion by curtailing the cross-examination of Investigator Byrne.

¶23. For the foregoing reasons, I respectfully dissent from the majority's opinion and believe we should affirm the judgment of the Adams County Circuit Court.

**CARLTON, P.J., AND LAWRENCE, J., JOIN THIS OPINION.**