BROOKS *v.* STATE.

In Banc. May 8, 1950.

No. 37374 (46 So. (2d) 94)

W. P. Searcy, Lester Franklin and L. C. Franklin, Jr., for appellant.

George H. Ethridge, Assistant Attorney General, for appellee.

Lee, J.

From a verdict of guilty, and a sentence of five years in the penitentiary, on the charge of assault and battery with intent to kill and murder, B. C. Brooks appeals.

About 3 A.M., on January 20, 1949, Winston Blakely, Marshal of the Town of Duck Hill, from the City Hall,

saw two men walking down the street. While one was a six-footer, the other was not so tall. He started toward them to find out what they were doing, but they disappeared in a back alley behind the stores. Hearing a noise in a brick store, he flashed his searchlight around the corner of the building, and saw, on the walk about 24 steps away, a man, who was wearing a short coat and a light hat. Blakely called to the man to come out. The response was a pistol shot. Blakely returned the fire. A fusillade of shots ensued, he firing 7, and his assailant 8. When the shooting was over, another man came out of the store, and both of them hurried to a parked car, 65 yards away, and took off at high speed. As this car went around a curve, Blakely noticed that the right taillight alone was burning. It was a cream or light gray Pontiac. When it came back through town a few moments later at like speed, the same condition of the taillight was observed.

Dale Patton's attention was attracted by the shooting. He thought it was a fire signal. He heard the car start and saw it going by his house under a street light. To him it was a white-looking Pontiac with a shiny out-of-state tag, and with the right taillight alone burning. At first he thought it was a patrol car, but, when it ran into a dead-end street and the brakes were applied, he then saw that it was not a patrol car.

The alarm was sounded and the officers were on the lookout for such an automobile. But nothing developed until the following February 7th, when a number of .officers went to appellant's place at Durant, arrested him, and seized his cream or light gray Pontiac automobile. They drove it to Duck Hill and had Blakely observe it. They also drove the automobile by Patton's place about 3 A.M. so that he could also see it.

Brooks was incarcerated in the jail at Water Valley. Shortly thereafter, the sheriff examined him in the jail and found a wound in his right shoulder, which he also

photographed. In addition, he caused a doctor to make an examination.

While appellant was in jail, the officers went to his place, searched it and procured a .38 caliber pistol and a brown mackinaw coat.

On the trial, Blakely identified Brooks as the assailant whom he had seen for an instant by the aid of a search-light. He further testified that the car obtained by the officers from Brooks looked like the one he saw on the night of the crime. Patton testified that the car driven past his home by the officers, under like circumstances, fit the description of the car in which the assailant had escaped. The coat and the .38 caliber pistol were introduced in evidence. A bullet, dug out of a wall near the place where the shooting occurred, and which was testified to be a .38 caliber, was introduced in evidence, although there was no proof by microscope or ballistic examination that it came out of the .38 caliber pistol, which was introduced in evidence. The evidence further showed that the right taillight burned, but the left was out, and when the brakes were applied, the tag could be seen. The sheriff found a dim track where the car left the scene. While he made no use of moulage at the time, still he was able to keep a mental picture thereof, and, nearly three weeks' later after seizing the automobile, he was positive that the dim track was made by a tire of the Brooks automobile.

In the trial of this case, the appellant's constitutional rights were violated in these particulars: (1) The State, in its proof, failed to show any authority for seizure of the Pontiac automobile. Section 23 of our Constitution prohibits unreasonable seizures. See Cofer v. State, 152 Miss. 761, 118 So. 613.

(2) The State, in its proof, failed to show any authority for the search of Brooks' place, and the seizure of his coat and pistol. Section 23, Mississippi Constitution.

(3) The State, in its proof, failed to show that Brooks voluntarily submitted to an examination of his person

for a bullet wound by the sheriff and by a doctor, and a photograph thereof. Section 26 of our Constitution provides that in criminal cases an accused "shall not be compelled to give evidence against himself".

(4) The automobile having been unlawfully seized, the sheriff's comparison of a tire thereon with the dim track which he had observed at the scene was inadmissible. Again, Section 23 of our Constitution.

Besides in the cross examination of Brooks, he was asked, "This place of business you run is a bootlegging establishment, isn't it?" And, "It is where you sell whisky isn't it?" This was highly improper and prejudicial as showing guilt of another crime. Floyd v. State, 166 Miss. 15, 148 So. 226.

Appellant had employed a lawyer, and such attorney was present during the trial. However, the record fails to show objections to the violation of constitutional and fundamental rights, as pointed out above. As a matter of fact, there is not a single objection in the record, nor was a motion for a new trial made.

Some time after the trial of the case, appellant secured other counsel, who sought from the trial judge a writ of error *coram nobis* on the ground that his attorney, at the trial, had made not even a token defense. This petition was overruled. The latter counsel have again submitted this question to the Court, and, in their brief, pray for the issuance of such a writ.

However, in view of the conclusion reached, we do not take up the question of *coram nobis* at all.

This case is a most unusual one. If objections had been made on the questions pointed out above, and such objections had been overruled, a reversal would be obvious. But no objections were made. However, the State has procured this conviction by the introduction of such evidence which was inadmissible because it was obtained in violation of constitutional and fundamental rights. Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377; Fulton v. City of Philadelphia, 168 Miss.

30, 148 So. 346; Lancaster v. State, 188 Miss. 374, 195 So. 320.

If appellant had been without a lawyer, no doubt the trial judge would have intervened on his own motion; but since no objection was made, we assume that he was led to believe that counsel had adopted some strategy of which he was not aware.

█ █ Errors or omissions jurisdictional in character are exceptions to Section 1987, Code of 1942. Only errors so grave as to deny the defendant the benefit of some fundamental right are considered where a jury, under the law and the evidence, could reach no other verdict than that of guilty. Wexler v. State, 167 Miss. 464, 142 So. 501; Wright v. State, 193 Miss. 119, 8 So. (2d) 455. Constitutional rights in serious criminal cases rise above mere rules of procedure. Fisher v. State, 145 Miss. 116, 110 So. 361; Brown v. State of Mississippi, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682. Errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal. Carter v. State, 198 Miss. 523, 21 So. (2d) 404.

█ █ Besides, no person can be deprived of his liberty except by due process of law. Section 14, Article 3, Mississippi Constitution. This prohibition is intended to guarantee the protection of fundamental and constitutional rights, so that a fair trial shall result. Every person is entitled to a fair and impartial trial, and the dispensing of justice is the object of courts. Floyd v. State, supra. Thus, where fundamental and constitutional rights are ignored, due process does not exist, and a fair trial in contemplation of law cannot be had.

In Lisenba v. People of State of Calif., 314 U. S. 219, 62 S. Ct. 280, 290, 86 L. Ed. 166, the Supreme Court of the United States aptly said: "The aim of the requirement of due process is . . . to prevent fundamental unfairness in the use of evidence whether true or false."

And again they said: "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial . . .."

We repeat that this is a most unusual case. We neither condone nor reward in action. ██ ██ But we cannot affirm where due process has been so lacking that a conviction has resulted without proper consideration of constitutional and fundamental rights.

Reversed and remanded.