441 So.2d 520 (1983)
Connie Ray EVANS
v.
STATE of Mississippi.
No. 53754.
Supreme Court of Mississippi.
November 30, 1983.
Rehearing Denied January 25, 1984.
*521 Solomon Osborne, Greenwood, for appellant.
Bill Allain, Atty. Gen., Amy D. Whitten, William S. Boyd, III, Sp. Asst. Attys. Gen., Jackson, for appellee.
En Banc.

ON APPLICATION FOR LEAVE TO FILE PETITION FOR WRIT OF ERROR CORAM NOBIS
ROY NOBLE LEE, Justice, for the Court:
Connie Ray Evans was convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, and sentenced to suffer death, according to the law of the State of Mississippi. That judgment and sentence were affirmed by a unanimous decision of the Mississippi Supreme Court on November 3, 1982, and petition for rehearing was denied December 15, 1982. Evans v. State, 422 So.2d 737 (Miss. 1982). The facts recited in the opinion reflect that during the evening hours of April 8, 1981, Evans and his accomplice met and made plans to rob R.J. Food Store located on Lynch Street in Jackson, Mississippi. Evans stated to his accomplice that they might have to kill the storekeeper during the robbery. The next day, Evans and the accomplice robbed the store and clerk of approximately $400.00, and, in the process, Evans shot and killed the clerk.
A petition for a writ of certiorari to the Supreme Court of Mississippi was filed in the United States Supreme Court and that court denied the petition on May 16, 1983. Petition for rehearing was filed and also was denied. Application for Leave to File Petition for Writ of Error Coram Nobis was filed on July 1, 1983, setting out eighteen (18) grounds for relief, each of which we address hereinafter.

I.

Unlawful Application of Statutory Aggravating Factors

A. The State's Use in Petitioner's Case of the Statutory Provisions that the Murder was "Especially Heinous, Atrocious and Cruel."

This ground was presented to the Court on direct appeal from Evans' conviction *522 and sentence and was resolved by the Court in the following response:
In the case sub judice, the victim was forced to kneel on the floor behind the counter with a.38-caliber revolver pointing at his head, he was made to stand up at gunpoint and open the cash register, and again was forced to kneel on the floor with the revolver still pointing at his head. He was physically assaulted by one of the robbers emptying his pockets, all occurring over a short period of time. From those facts, the jury could consider mental torture and aggravation which the victim probably underwent, and to determine whether or not the murder under all the facts and circumstances was especially heinous, atrocious or cruel. Even though it may be said that the facts of the homicide do not pass constitutional muster on the aggravating circumstances of being especially heinous, atrocious or cruel, three (3) other aggravating circumstances were proved by overwhelming evidence. [Evans v. State, 422 So.2d 743].
Thus, the matter having been fully and finally litigated on direct appeal, it is res adjudicata, may not be relitigated in a coram nobis proceeding, and is procedurally barred.
We note that Evans argues on this point in his petition that "Moreover, as expressly acknowledged by this Court in its review of petitioners's case on direct appeal, there was wholly insufficient evidence to support the jury's reliance upon this aggravating circumstance in imposing a death sentence on petitioner." The argument is misplaced. The response clearly sets out that the aggravating circumstance of being especially heinous, atrocious or cruel was properly submitted for the consideration of the jury and for its determination. The phrase "Even though it may be said that the facts of the homicide do not pass constitutional muster on the aggravating circumstance of being especially heinous, atrocious or cruel, ..." is a different way of saying "Assuming arguendo, ..." or "Even though it may be argued, ..." or "For the sake of argument, ..."

B. The State's Use in Petitioner's Case of the Statutory Provision that Petitioner's Offense was Committed for the Purpose of "avoiding ... lawful arrest" as an Aggravating Circumstance

This contention was not alleged as error and presented on direct appeal. The issue may not now be raised for the first time on this application for leave to file the petition for writ of error coram nobis, and it is procedurally barred. Smith v. State, 434 So.2d 212 (Miss. 1983); Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983); Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983).

C. The Use of the Statutory Provision that Petitioner was "under sentence of imprisonment" at the Time of the Offense as an Aggravating Circumstance

This contention was presented and argued to the Court on direct appeal (Evans, supra, at 741), it may not be relitigated again on this petition and is procedurally barred.

II.

Interjection of Evidence Based on Non-statutory Aggravating Circumstances

A. Color Slide Evidence

B. Testimony of Victim's Brother

C. Police and Pathologist Testimony

The contentions A, B, and C were presented to this Court on direct appeal and were decided adversely to petitioner. Therefore, they may not be relitigated on this petition and are procedurally barred.

D. Evidence of Bullet and Victim's Belongings

Petitioner did not allege as error or present same to this Court on direct appeal, the issue may not now be raised for the first time on the petition and is procedurally barred. (Smith, supra; Edwards, supra; and Wheat, supra).

*523 E. Failure to Give a Jury Instruction Limiting Consideration of Aggravating Circumstances

This contention was alleged as error and briefed on direct appeal and was rejected by the Court. It may not now be relitigated on this petition and is procedurally barred. (Evans, supra, at 745).

III.

Other Constitutional Errors in the Sentencing Trial
1. Removal of Juror with Scruples Against Capital Punishment

2. The Prosecuting Attorney's Pervasive Pattern of Misconduct

Evans contends that the lower court erred (1) in removing a juror with scruples against capital punishment, and (2) the prosecuting attorney's argument constituted error. Both of these contentions were presented to this Court on direct appeal and were found to be without merit. (Evans, supra, at 740, 746). They are res adjudicata, may not be relitigated on this petition and are procedurally barred.
3. The Absence of a Finding of Intent to Take Life

4. The Absence of Notice of Aggravating Circumstances

5. Refusal to Allow Petitioner's Witness to Testify on His Behalf Violated Petitioner's Rights under the Eighth and Fourteenth Amendments

6. The Absence of a Presentence Report

7. Inadequacy of the Trial Judge's Report

8. Inadequacy of Appellate Review Procedures

Evans relies upon Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and contends (3) that he did not kill, attempt to kill, or intend that a killing take place during the robbery, and that the death penalty should not have been imposed. In Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the court held:
Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default. [456 U.S. at 134, 102 S.Ct. at 1575, 71 L.Ed.2d at 804].[1]
He contends that (4) the indictment alleged no aggravating circumstances and that the omission violated his rights under the Fourteenth and Sixth Amendments of the United States Constitution, (5) the lower court's refusal to permit his witness to testify in mitigation of the sentence violated his Eighth and Fourteenth Amendment rights, (6) the absence of a pre-sentence report constituted error, (7) the inadequacy of the trial judge's report was error, and (8) Mississippi's proportionality review structure is inadequate and prejudicial to him.
None of these contentions listed here were raised or presented on the direct appeal, and they are procedurally barred. Smith, supra; Edwards, supra; Wheat, supra.
9. Arbitrariness of the Death Penalty in Mississippi

10. Discriminatory Aspects of the Death Penalty in Mississippi

Evans contends that (9) his sentence is disproportionate and arbitrary and (10) the death penalty in Mississippi is imposed in a discriminatory manner. Those contentions were not presented on the direct appeal, they are unpreserved and are procedurally barred. Smith, supra; Edwards, supra; Wheat, supra.
We are of the opinion that the Application for Leave to File Petition for Writ of Error Coram Nobis in the Circuit Court of the First Judicial District of Hinds County, Mississippi, should be denied.
APPLICATION DENIED.
*524 PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, and DAN M. LEE, JJ., concur.
ROBERTSON, HAWKINS and PRATHER, JJ., dissent.
ROBERTSON, Justice, dissenting:

I.
For at least two decades the writ of error coram nobis has been a post-conviction form of action through which prisoners of the state have filed constitutional challenges to their convictions and sentences. We have venerated this writ, for it fulfills our felt obligation to assure that no person experiences the sting of the state's penal sanctions inconsistent with the constitution.
Secondary but also important is our federalism context. When Mississippi's prisoners have been admonished that their complaints may not be heard in federal court until all viable state remedies have been exhausted, we have insisted that this state affords such a remedy. We have proclaimed it plain, adequate and speedy. As a responsible partner in our federal system we would be remiss if we did not afford state prisoners such a remedy.
Today's decision renders the writ of error coram nobis an empty form of action. It is still on the books. There is simply not much of any importance it may be used for.
After today we have no plain, adequate and speedy post-conviction remedy for adjudication of constitutional issues. Today's decision makes clear that, if such issues are presented at trial and on direct appeal, they are barred on error coram nobis as res judicata. If such issues are not presented at trial and on direct appeal, they are deemed waived. All constitutional claims are thus precluded from post-conviction review. Today's decision unmistakably holds that the writ of error coram nobis is no longer a viable form of post-conviction action for the litigation of a prisoner's constitutional claims no matter how meritorious those claims may be. The writ has become an ambassador without portfolio.
Because our action today is so out of keeping with my understanding of our judicial responsibilities in cases such as this, I respectfully dissent and set forth my reasons at some length.

II.

A.
We recall the standing the writ of error coram nobis has had.[1]
Though it was available at common law, the writ of error coram nobis has a statutory base in this state. Miss.Code § 99-35-145 (1972). This statute became law over thirty years ago. Miss. Laws, ch. 250 (1952). It was passed out of the legislature's "cognizance of the need to establish an adequate post-conviction remedy". Smith v. State, 155 So.2d 494, 495 (Miss. 1963).
In Windom v. State, 192 So.2d 689 (Miss. 1966), for example, the Court described the coram nobis remedy in this language:
This Court has provided a plain, adequate and speedy post-conviction remedy for adjudication of all issues that may be raised under the Constitution of the United States or the Constitution of Mississippi.
192 So.2d at 691.
This language was quoted and cited with approval in Love v. State, 221 So.2d 92, 94 (Miss. 1969). In Love the Court went on to insist that:
"... This state has an adequate post-conviction remedy for an application for relief by persons convicted of crime. *525 Even the most hardened criminals are not denied a `full-blown hearing'"

221 So.2d at 95. [Emphasis added].
The office of the writ of error coram nobis as this state's form of action designed to accommodate post-conviction consideration of constitutional issues was reiterated in Nelson v. Tullos, 323 So.2d 539 (Miss. 1975).
In this jurisdiction relief for a defendant who claims to have been convicted as the result of a deprivation of his constitutional rights is by writ of error coram nobis. As this Court pointed out in Botts v. State, 210 So.2d 777 (Miss. 1968):
The function of a writ of error coram nobis is to bring to the court's attention some matter or fact which does not appear on the face of the record which was unknown to the court or the parties at the time, and which, if known, and properly presented, would have prevented the rendition of the original judgment. The violation of defendant's constitutional right to be represented by counsel constitutes ground for granting a writ of error coram nobis to correct a former judgment. 18 Am.Jur.2d Coram Nobis § 17 (1965). (210 So.2d at 779).

Accord Clayton v. State, 254 So.2d 874, 875 (Miss. 1971); Allred v. State, 187 So.2d 28, 30 (Miss. 1966).
323 So.2d at 543.
As recently as 1982 we observed that the writ of error coram nobis is the form of remedy available to one mounting a "collateral attack based upon constitutional defects ... [in his] conviction".[2]Phillips v. State, 421 So.2d 476, 483 (Miss. 1982).

B.
Through the error coram nobis procedure, this Court has repeatedly allowed presentation of constitutional issues which could have been litigated at trial or on direct appeal but for various reasons were not.
Fondren v. State, 199 So.2d 625 (Miss. 1967) typically reflects the office of our writ of error coram nobis. Thomas Earl Fondren had been tried and convicted of burglary. This Court had affirmed on the merits. Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965). Two years later Fondren sought release via writ of error coram nobis. *526 He assigned an alleged denial of his constitutional right to trial before a jury drawn from a fair cross-section of the community. He alleged that in fact black persons had long been excluded systematically from juries in his county and that this exclusion rendered constitutionally infirm his conviction and sentence. This Court granted relief on the merits. Fondren v. State, supra, 199 So.2d at 626-627. In Fondren the systematic exclusion claim was not held procedurally barred. Fondren had not timely raised the issue at trial. He had not assigned it as error on direct appeals. In spite of these failures, when the case reached this Court two years later via error coram nobis, we reached the merits and granted relief. There was no waiver of the claim "since the proof shows that he [Fondren] was not advised of his rights by prior counsel". 199 So.2d at 626.
What is important about Fondren is that the constitutional infirmity in Fondren's conviction is in fact just as procedurally barred as is Evans'. Evans' procedural default is qualitatively the same as Fondren's, no more, no less. Fondren's "barred" constitutional claim was considered on its merits. Why Fondren does not require similar treatment of Connie Ray Evans' constitutional claims escapes me.

C.
There is another context in which we have routinely ignored so-called "procedural bars" and allowed prisoners to present their constitutional claims via error coram nobis. These cases have arisen when the prisoner has pleaded guilty, had his plea accepted and been sentenced. Later he seeks error coram nobis relief on constitutional grounds. The plea of guilty constitutes a waiver of an accused's most basic constitutional rights. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969); Phillips v. State, 421 So.2d 476, 479 (Miss. 1982). We have nevertheless proceeded to adjudicate the merits of such cases  almost routinely. See, e.g., Echoles v. State, 254 Miss. 133, 180 So.2d 630 (1965) (prisoner allowed to challenge sufficiency of indictment even though he voluntarily pleaded guilty and waived his rights).
Arguably there is a qualitative difference in the Echoles waiver and that involved here. Echoles' guilty plea was knowing and voluntary on his part. Evans' "waiver" undergirding the majority's view is predicated upon the inactions of counsel in which no one could say Evans was a knowledgeable participant. If Echoles was entitled to be heard on the merits of his claim, Evans is even more certainly similarly entitled.

III.
Connie Ray Evans, III has now presented to this Court his petition for a writ of error coram nobis. He charges that his death sentence is infected with no less than sixteen infirmities, each said to be of constitutional dimension. He has done this via an application adequate under Rule 38, Miss. Sup.Ct. Rules, an application which lays bare much flesh to many of his substantive claims.
The majority holds each of Evans' claims procedurally barred, apparently accepting the State's candid and (to my mind) shocking insistence that:
Any relative merit which might be found in the [sixteen constitutional] claims is afforded no consideration where the machinery for preserving the claim has gone unused.
State's Brief, p. 11. [Emphasis added].
The majority would have Evans die, not because the proceedings at trial and on direct appeal were fundamentally fair or constitutionally adequate, but because his lawyer goofed. We have here no suggestion that defense counsel chose deliberately to bypass the trial and appellate process. The State does not argue that defense counsel eschewed presenting these sixteen constitutional claims as a matter of conscious trial tactics. Connie Ray Evans, the center and subject of this kafkaesque nightmare, no doubt has not the slightest comprehension of his lawyer's inaction at trial or our action here. Decisions that life be taken should be made of more solid stuff.
*527 The majority opinion is, I submit with sincerest respect and deference, in grave error on two fronts  first, in its unjust impact on the man whose life is here on the line; and, second, in its complete evisceration of the coram nobis post-conviction remedy.
Make no mistake about the implications of the procedural bar the majority would impose upon Connie Ray Evans. It presumes that, in at least sixteen different particulars, Evans' rights secured by the Constitution of the United States may have been violated. No matter. The majority holds that Evans must die, his sixteen federal constitutional claims never having been considered on their merits by anyone. What state interest requires such a fateful step wholly escapes me!
Second, and to my mind even more disturbing, are the institutional ramifications of the majority opinion. The writ of error coram nobis, as we have heretofore known it, has been substantially eviscerated.[3] After today's decision, there is no post-conviction relief available in this Court on questions of criminal constitutional law![4]
Consider the logic implicit in the majority opinion. Alleged violations of constitutional and other rights must be objected to at trial and then raised as assigned errors if they are to be preserved for consideration on their merits on direct appeal. If error is not properly preserved, then such error may not  says the majority  be asserted as a basis for post-conviction relief because of procedural bar. If, however, the defendant preserves the error, the majority nonetheless denies post-conviction proceedings because all such preserved errors have been reviewed on direct appeal and are thus res judicata.[5] The majority opinion allows neither preserved nor unpreserved error to be raised for post-conviction review. If this be the law, it is difficult to imagine why we ever thought it necessary to have a post-conviction remedy for the litigation of constitutional claims at all.[6]

IV.
The dissent I register here is undergirded by a powerful principle well stated by this Court over thirty years ago in Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950).

*528 Constitutional rights in serious criminal cases rise above mere rules of procedure.
209 Miss. at 155, 46 So.2d at 97.
This principle was restated with approval in Gradsky v. State, 243 Miss. 379, 384, 137 So.2d 820, 821 (1962). Its current vitality is attested by the Court's recent decisions in Read v. State, 430 So.2d 832, 837 (Miss. 1983); and Richardson v. State, 436 So.2d 790, 791 (Miss. 1983). See also, my dissenting opinion in Hill v. State, 432 So.2d 427, 443-451 (Miss. 1983).
This principle has force for a more fundamental reason: it is intuitively and demonstrably just. The point is graphically illustrated by imagining the converse principle: In serious criminal cases, fundamental constitutional rights are subordinated to mere rules of procedure. No court would consciously embrace such an exhaltation of form over justice, yet such is the inescapable implication of the majority opinion.
There is a practical reason why strict adherence to the spirit of Brooks is so important here. Death penalty litigation has become highly specialized. Few Mississippi lawyers have even a surface familiarity with the seemingly innumerable refinements put on Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and progeny.[7]
We have reviewed the record in numerous death penalty cases in recent years. Generally, we find that a vigorous all-out defense is made, although there are exceptions. Generally speaking, the Mississippi Bar has reason to be proud of the vigor and competence with which its members have defended capital cases. On points that arise regularly in criminal cases of all descriptions  change of venue, insanity defense, pretrial motions to suppress statements and evidence, trial tactics generally, jury instructions, and the like  our bar has performed well. What happens frequently, however, and what has happened in this case, is that  as a conventional criminal case  the case was well tried. In spite of this, numerous important and highly technical death penalty issues were not raised. Most of the sixteen issues presented on this petition are issues which have resulted in death sentences being vacated in other cases. These are points of law with which the average Mississippi criminal defense lawyer has no familiarity.[8]
Nothing said here suggests any inference that we here deal with ineffective assistance of counsel. Nonetheless, there can be no doubt that counsel's ignorance of the constitutional issues at stake in a capital case is responsible for many procedural defaults here. It follows to my mind that we ought decide these cases on the merits of the issues tendered, procedural niceties to the contrary notwithstanding.

V.
The majority opinion relies on a trilogy of recent decisions as supporting the proposition that we now have a blanket rule requiring enforcement of procedural bars on constitutional claims asserted in death penalty cases via application for writ of error coram nobis. Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983);[9]Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983); and Smith v. State, 434 So.2d 212 (Miss. 1983). In my view, none of these cases is nearly so broad.
Despite the fact that the majority offers Edwards as a case in which the blanket rule requiring procedural bar was invoked, only six of seven assignments of error in Edwards were treated as either res judicata[10] *529 or procedurally barred. The fifth assignment of error  whether Edwards possessed an intent to kill  was treated unequivocally on the merits. 433 So.2d at 908. The issue could have been found res judicata as the direct appeal opinion discussed the sufficiency of evidence for finding that Edwards was the killer. 413 So.2d at 1013. The issue also could have been found procedurally barred because the issue  both at trial and on direct appeal  was "less than precisely framed" and thus not preserved. 433 So.2d at 908. Even though such methods for disposing of the issue on procedural grounds were available, the court, nonetheless, reached the merits. Obviously, no "blanket rule" is enunciated by this case.
In Wheat v. Thigpen, five of the points raised on post-conviction proceedings had been previously decided by this Court on direct appeal. Cf. Wheat v. State, 420 So.2d 229, 232 (Miss. 1982). Three other issues  alleged improper closing argument at the guilt phase, alleged improper jury instruction at the sentencing phase, and alleged improper closing argument at the sentencing phase  were neither preserved at trial nor presented to this Court on direct appeal. Wheat holds the three unpreserved claims procedurally barred. Nothing in the opinion, however, attempts to articulate a rule going beyond the facts of the particular case. Nothing in Wheat purports to announce a general rule requiring enforcement of procedural bars precluding litigation of all constitutional claims in all death penalty post-conviction proceedings.
In Smith v. State, 434 So.2d 212 (Miss. 1983), the Court cites a number of cases for the proposition that this Court holds that post-conviction relief is not available on issues which could or should have been litigated at trial or on appeal.[11] Neither *530 Smith, nor Edwards nor Wheat, hold that fundamental constitutional issues  that are neither raised at trial nor assigned as error on direct appeal  are foreclosed from presentation on post-conviction; such a holding would necessitate overruling many prior cases. See Hill v. State, 432 So.2d 427, 443-451 (Miss. 1983) (Robertson, J., dissenting).

VI.
The majority relies on Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1983), in support of the proposition that petitioner's constitutional claims not presented at trial or preserved on direct appeal should be deemed procedurally barred. This citation is out of place. Isaac literally concerns another world.
Isaac articulates principles to be applied by federal courts, not state courts. In Isaac, a federal court is being asked to interfere with the final judgment of the highest court of a state. By way of contrast, Evans asks this Court in effect to reconsider its own prior final judgment, something we have inherent authority to do. Wetzel v. State, 225 Miss. 450, 483, 76 So.2d 194, 198 (1954); Rogers v. Jones, 240 Miss. 610, 128 So.2d 547, 551 (1961).
The dominant interest underlying the Isaac principle is comity  the federal court's comity obligation to respect the competence of state courts and the finality of state adjudications. Isaac is describing the circumstances under which a federal court should be reluctant to interfere with a final judgment of this Court. This is what  and all  that is said in the sentence from Isaac quoted by the majority.
Isaac is wholly irrelevant when this Court is being asked to reconsider its own judgment. There are no comity considerations present. We are on the other side of the Isaac situation. Not one word in Isaac, not one thought articulated in the opinion, has the slightest application to the question of whether a state court ought hear, on post-conviction proceedings, constitutional claims not timely presented on direct appeal. We fashion our own rule on this question.
Despite the total inapplicability of the decision in Isaac to this Court, an examination of the facts in Isaac  facts under which state, procedural bars may be enforced  is instructive. Isaac is not a death penalty case. The Supreme Court of the United States has repeatedly held that death is different.[12] In its "death is different" *531 cases, the Court has articulated interests and premises which are simply not present in non-capital cases. Because the penalty is qualitatively different in severity and finality from any other punishment known to our law, it makes no sense that the procedural rules of Isaac should be applied the same as in non-capital cases.

VII.
It is important to understand the reasons why the State urges that the issues tendered be disposed of on procedural grounds only. The State's articulated motivation is to short-circuit anticipated federal court review via habeas corpus under 28 U.S.C. § 2254. The State is saying we should hold Evans' claims procedurally barred, not because such would promote the interests of justice, but rather that such would pull the rug out from under Evans when he ultimately seeks federal review of his case.[13] The State not only asks that we refuse to address Evans' claims on their merits but unashamedly further seeks our aid in avoiding litigation of Evans' sixteen federal constitutional claims in any federal court.
The Attorney General and this Court have become interested in invoking procedural bars in death penalty cases only in recent years. Prior to the death penalty moratorium which covered the last half of the 1960s and most of the 1970s, procedural bars in death penalty cases were unheard of. For a collection of authorities to this effect, see my dissenting opinion in Hill v. State, 432 So.2d 427, 443-45 (Miss. 1983).
A review of recent history is instructive  and reveals our affection for procedural bars to be particularly unseemly.
In seven cases, those of Richard Gerald Jordan,[14] Johnny Lewis Washington,[15] Jimmy Lee Voyles,[16] Charles Sylvester Bell,[17] John Buford Irving,[18] Larry Jones[19] and *532 Willie Reddix,[20] we have affirmed final judgments of conviction and sentences of death. We have thereafter denied coram nobis and other post-conviction relief in each of these cases. Subsequently, in each of these cases, for one reason or another, courts of the United States have vacated the death sentences.[21] In each case, a federal court has held that imposition and carrying out of the sentence of death would be inconsistent with one or more provisions of the Constitution of the United States. In doing so, however, the federal judiciary has in no way interfered with any of our prerogatives on questions of state law. Indeed, the federal judiciary has bent over backwards in granting to us full berth on questions of state law. See, for example, the federal judiciary's response to our arguably dubious rewriting of an earlier death penalty statute in Jackson v. State, 337 So.2d 1242 (Miss. 1976); see Jordan v. Watkins, 681 F.2d 1067, 1077-78 (5th Cir.1982); Bell v. Watkins, 692 F.2d 999, 1010 (5th Cir.1982); Irving v. Hargett, 518 F. Supp. 1127, 1133-34 (N.D.Miss. 1981). It is in this context that we are presented with an undisguised demand that this Court assume an adversary position.
We sit as the highest court of the State of Mississippi, the court of last resort on all questions of state law. By virtue of the Supremacy Clause, we are obligated faithfully to enforce, not to subvert, the Constitution of the United States as the supreme law of the land. Bolton v. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965); Sanders v. State, 429 So.2d 245, 248, 251 (Miss. 1983). The best way to insulate our decisions from federal "tampering" is to get the cases right here. If this means reading the decisions of the Supreme Court of the United States and of the United States Court of Appeals for the Fifth Circuit as they are, rather than as we wish they were, so be it.
This State has an important interest in the enforcement of its capital murder statute, specifically including the death penalty portion thereof. That interest is not served by the Attorney General's continued insistence that we blink at federal constitutional rights vested in those accused of capital crimes. Death penalty litigation is in a new era. It is still evolving. Because human life is at stake, this evolution is necessarily a tortuous process. As a major participant in that process, we would serve best the legitimate interests of this State and its people by washing our own linen, rather than pretending that it's not dirty and then reacting with a fit of pique when the federal courts hold to the contrary.[22]
We ought be no more offended that federal courts have the final say on questions of federal constitutional law than are the federal courts about the fact that we have the final say on questions of state law. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and progeny. Indeed the federal judiciary's deference to our interpretations of state law has been most ungrudging. See, e.g., Jordan v. Watkins, 681 F.2d 1067, 1077-1080 (5th Cir.1982); Walters v. Inexco Oil Company, 670 F.2d 476 (5th Cir.1982). It would seem to *533 follow that we ought give a comparable respect to the competence of the federal judiciary in questions of federal law.
In every case that comes before this Court, and certainly in ones in which a man's life is on the line, our duty is clear. We must decide the case on the law and the facts, fearlessly and without looking over our shoulders at some other court. Our solemn responsibility is to decide each case as though there were no other court. To the extent that we act out of interest in what some other court may do in the future, we demean ourselves. We are judges, not advocates.
That seven out of the first eight of our cases to be reviewed in the federal courts resulted in the sentence of death being vacated ought to tell us that we have not been doing something right. Emphatically, this is not an occasion for our becoming advocates and devising procedural mechanisms for the blatantly obvious purpose of reducing the chances that death sentences affirmed here may be vacated by a federal court. Our obligation on our oaths is to decide carefully the merits of each constitutional claim tendered by each person sentenced to die. Our eye must be affixed to justice, not slanted toward Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

VIII.
We have emphasized above that the state does have an interest in the finality of criminal proceedings. We here flesh out what that means.
Once a criminal conviction has been finally affirmed in this Court and the time for further direct review has expired, the state's finality interest vests. It is by no means unreasonable or unfair that at this point an additional burden be placed upon the prisoner. Still we perceive no course of logic which would yield the conclusion that finality is the only interest then at stake. If it be shown that the prisoner's conviction or sentence be infected by substantial violations of rights secured by the Constitution or laws of the United States or of this state; and if it further be shown either that had these violations not occurred, the proceedings at trial would have been substantially more favorable to the prisoner or, that there exists good cause why the points were not raised on appeal; then the force of the state's finality interest is overcome.
A review of all of our cases makes clear that this Court has taken a flexible, and admittedly not altogether consistent, approach to post-conviction proceedings. On the one hand, there is much to be said for a continuation of this flexibility. On the other hand, we submit that the administration of justice will be enhanced by announcing general principles to be applied.
Whenever a prisoner, who has been finally convicted in the courts of the State of Mississippi and whose conviction has been finally affirmed by this Court, seeks post-conviction relief in this Court, and where such prisoner claims that his conviction and sentence have been infected by violations of rights secured to him by the Constitution of the United States or by the Constitution and laws of the State of Mississippi, and where the issues presented had not previously been tendered on direct appeal, the prisoner should be required to show either
(a) that there exists good cause why the point was not procedurally preserved at trial, or raised on direct appeal, or both, as the case may be,
or
(b) that the rights violations asserted did in fact subject him to a substantial detriment at trial; that is, had the rights violations not occurred, the trial process  as distinguished from its outcome  would likely have been more favorable to him than it was.
Beyond that, there is no sound reason why this Court should erect a procedural rule which would bar it from noticing, on direct appeal or on post-conviction proceedings, plain error. This Court's first duty is to administer justice.
Wainwright v. Sykes and Engle v. Isaac were never intended to encourage and insulate *534 state court irresponsibility. Rather, they are a part of a fundamental shift in emphasis within our system, whereby greater responsibility for the adjudication of substantive constitutional rights is being assumed by the highest courts of the several states. Without doubt the most certain way to assure that the charter will be revoked is for the states to default in their responsibilities.
In my view, our decision on Evans' petition should be as follows:
First, with respect to all claims asserted which were adjudicated on their merits on direct appeal, the petition should be dismissed. The previous adjudication is final. Res judicata precludes relitigation in the courts of this state.
Second, with respect to non-constitutional claims which either (a) were not properly preserved at trial or (b) were not presented on direct appeal, those claims have been effectively waived. In its supervisory capacity over its own judgments, this Court has the capacity to notice errors of this sort. Our plain error rule applies here equally as it does on direct appeal. Suffice it to say that in the case at bar I detect no alleged non-constitutional errors sufficiently plain to be noticed here.
Third, with respect to those claims asserted by Evans which are of constitutional dimensions, federal or state, and with respect to which the claim either was not timely preserved at trial and/or presented on direct appeal, we should hear Evans' claims provided he can demonstrate either cause or prejudice. Again, the Court retains plain error powers even though neither cause nor prejudice be shown.

IX.
Today we hold that Connie Ray Evans must die. We hold this though Evans has presented to us sixteen reasons of constitutional proportions why his sentence is unlawful. The net effect of today's decision is that no court may ever consider the merits of any of Evans' points. He must die not because he has been convicted and sentenced consistent with the constitution, but because his lawyer made mistakes.
Today's opinion, with deference to my colleagues, turns back the clock. Today we announce an abdication of our responsibilities to administer justice to persons within our jurisdiction. We turn our back on responsible federalism.
In Allred v. State, 187 So.2d 28 (Miss. 1966) we posed the question:
What remedy then is open to a defendant in the state courts, who claims to have been convicted because the State obtained his conviction by violating his constitutional rights? 187 So.2d at 30.
Today's answer is loud and unequivocal: NONE!
HAWKINS and PRATHER, JJ., join in this dissent.
NOTES
[1] Enmund was rendered July 2, 1982. Evans was sentenced to death October 15, 1981.
[1] Let me emphasize at the outset that I unreservedly join those who would "streamline and clarify post-conviction relief law and procedures" in this state. Edwards v. Thigpen, 433 So.2d 906, 907 fn. 1 (Miss. 1983). I prefer a single form of action for post-conviction relief which I would call simply a motion, analogous to the federal procedure under 28 U.S.C. § 2255. See also, Rule 81(e), Miss.R.Civ.P., which arguably abolishes all remedial writs, substituting motions. I write here in the context of recent history wherein the writ of error coram nobis has been the only viable post-conviction form of action available after affirmance on direct appeal in this Court.
[2] We are, of course, in no way bound by the view of our procedure taken by any federal court. I nevertheless regard as entirely correct the views expressed by the United States District Court for the Northern District of Mississippi in King v. Cook, 287 F. Supp. 269 (N.D. Miss. 1968). King was an exhaustion of remedies case. A state prisoner was seeking federal habeas corpus relief. As a prerequisite to his federal action, he had to "exhaust" any state remedies "available" and "effective". 287 F. Supp. at 272. [Emphasis added]. In this context U.S. District Judge Claude F. Clayton made these comments regarding Mississippi's error coram nobis remedy.

... [A] writ of error coram nobis in Mississippi is of broad scope and range, particularly giving cognizance to violation of constitutional rights occurring in criminal trials. 287 F. Supp. at 271. [Emphasis added].
Judge Clayton then considered the Georgia post-conviction remedy which had been recognized as "available" and "effective" by the United States Court of Appeals for the Fifth Circuit, and observed that the Court of Appeals,
... in holding that the state procedures might not be bypassed, applauded the "far reaching" act as an effective remedy for securing state court review of federal challenges to state convictions. It is the conclusion of this court that the statutory scheme enacted by Mississippi is not substantially different and no less effective than that provided by Georgia. 287 F. Supp. at 272.
The District Court concluded with this language:
Thus it is seen that Mississippi, in enacting § 1992.5, had a comprehensive procedure for the rehearing of criminal cases, wherein errors of a constitutional nature have occurred, as early as 1952, at which time Georgia still severely restricted the scope of its post-conviction remedies. The purpose of the Mississippi legislature in enacting § 1992.5 was to provide a meaningful and effective procedure for the protection of constitutional rights of those convicted of crime and the highest court of the state has interpreted the act in accordance with that purpose. Therefore, this court will stay its hand until petitioner has pursued those remedies provided to him by the State of Mississippi. 287 F. Supp. at 272. [Emphasis added].
Judge Clayton's eyesight in 1968 was twenty-twenty. Why the majority has found it desirable or appropriate to restrict that view has not been explained.
[3] Presumably the writ may still be used to present ineffective assistance of counsel claims. Read v. State, 430 So.2d 832, 836-842 (Miss. 1982). It may also continue to serve its common law function as a form of action through which a prisoner may call to the court's attention some matter of fact not appearing on the face of the record and unknown at the time of trial. Petition of Broom, 251 Miss. 25, 32-33, 168 So.2d 44, 48 (1964); Allred v. State, 187 So.2d 28, 30-31 (Miss. 1966); Nelson v. Tullos, 323 So.2d 539, 543 (Miss. 1968).
[4] This case must be confined to its procedural context: trial on the merits ending in conviction and sentence, affirmance on direct appeal, followed by an application here for post-conviction relief via writ of error coram nobis. Of course, all post-conviction applications by death row inmates are likely to be made in this procedural context. I trust no one will suggest any implied modification or repeal of the habeas corpus procedure provided in RULE 8.07 of Uniform Criminal Rules of Circuit Court Practice effective August 16, 1979. In such cases the prisoner applies to the circuit court. That procedure has supplanted and now encompasses all post-conviction actions wherein the original proceedings terminated at the trial court level and the prisoner's initial application is made to a circuit court. By way of contrast, we are here concerned with cases where this Court last had jurisdiction and where heretofore the writ of error coram nobis initially sought here was the only viable remedy. See Rule 38, Miss.Sup.Ct. Rules.
[5] Let me be clear that I wholly agree that res judicata does set in once an issue has been finally adjudged on its merits and affirmed on direct appeal. In such cases the defendant has had his day in court on any such issue. Of course, where a man's life is on the line it would seem appropriate for the Court to recognize plain error. In the absence of plain error, however, there seems to me to be nothing objectionable in the application of res judicata to preclude relitigation via error coram nobis of constitutional claims adjudged on their merits on direct appeal.
[6] Culminating with Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court of the United States has been engaged in a constant and conscious effort to afford the states full opportunity to handle the merits of their prisoner's post-conviction complaints. Today's decision makes clear that you can lead a horse to water but you cannot make him drink.
[7] For a survey of these "refinements" see my article Fleshing Out the Premises and Procedures for Capital Murder Trials, 8 Voir Dire 6 (1982).
[8] This situation is analogous to that in the Fondren case discussed above. Fondren v. State, 199 So.2d 625 (Miss. 1967). In Fondren, defense counsel at trial and on direct appeal no doubt was unfamiliar with the then evolving "systematic exclusion" issue.
[9] I specially concurred in Edwards expressing briefly reservations comparable to those I express here at more length. Edwards v. Thigpen, supra, 433 So.2d at 909.
[10] Technically speaking, res judicata is a form of procedural bar. It is one which does not seriously concern me because in such situations the prisoner has had a full dress adjudication of his constitutional claims on their merits (although I would allow "plain error" leeways even there). My target here is the waiver procedural bar which, if enforced, may mean that no court will ever consider the merits of the constitutional claim.
[11] 434 So.2d at 215. The cases cited in Smith and their actual holdings are as follows. In Wetzel v. State, 225 Miss. 450, 76 So.2d 188 (1944), the Court eschewed the procedural bar to the coram nobis petition consequent to the circuit court's refusal to grant the petition and instead held: "... the Court will consider this petition en banc in a regular term on its merits, as being addressed to the inherent constitutional powers of the court in its revisory capacity with reference to a case pending before it." 255 Miss. at 483, 76 So.2d at 198.

Goldsby v. State, 226 Miss. 1, 86 So.2d 27 (1956) was one of the early cases involving the charge of systematic exclusion of black persons from jury service, a constitutional issue. The Court stated:
It should have been raised in the lower court.
226 Miss. at 27, 86 So.2d at 32.
Despite the Court's reference to untimeliness, the petition was examined on its merits and denied for lack of proof by affidavit, nor for procedural default. 226 Miss. at 28-29, 86 So.2d at 32.
Rogers v. Jones, 240 Miss. 610, 128 So.2d 547 (1961), holds that the writ of habeas corpus in this state has a more restrictive purpose than that allowed in the federal courts. Petitioner Rogers was denied habeas corpus relief, with the Court stating that if he had a remedy it was the coram nobis remedy. By no stretch of the imagination can it be said that Rogers stands for the proposition that constitutional issues not presented at trial or on appeal are forever foreclosed from consideration on coram nobis.
In Rogers the Court did make this statement:
It has been said that the right to issue a writ of error coram nobis is founded on the inherent power of the court over its judgments and proceedings. See Hawie v. State, 121 Miss. 197, 83 So. 158.
240 Miss. at 619, 128 So.2d at 551.
In Kennard v. State, 246 Miss. 209, 148 So.2d 660 (1963), the relief was denied on grounds that:
This is a re-argument of the case on the merits of that issue. It was fully discussed in our original decision affirming the conviction.
246 Miss. at 211, 148 So.2d at 661.
In other words, the rejection or coram nobis relief in Kennard was on res judicata grounds, not on grounds that the issue had not been timely preserved.
In Gordon v. State, 160 So.2d 73 (Miss. 1964), the Court found a waiver of the constitutional issue pertaining to the systematic exclusion of blacks from the jury. This waiver was essentially in the nature of finding that the failure to raise the issue in a timely manner was either a deliberate by-pass or an admission that the issue was frivolous. Gordon's first trial had been reversed on precisely this juror-exclusion issue. 243 Miss. 750, 753, 140 So.2d 88, 89 (1962), cited in 160 So.2d at 74. Gordon made no showing "on the merits" of this claim. 160 So.2d at 76. Given "all of these circumstances," the Court found a waiver of the constitutional issue. This sort of careful consideration of the "cause" (deliberate by-pass) and the "prejudice" (issue was frivolous) is an intelligent and reasonable manner for evaluating post-conviction claims by the state that issues ought be held procedurally barred.
In Irving v. State, 194 So.2d 239 (Miss. 1976), the application for a writ of coram nobis alleged matters which had been considered on direct appeal and were thus res judicata. The opinion of the Court makes no reference to constitutional issues and, accordingly, offers no support for any broad application of procedural bar.
In Auman v. State, 285 So.2d 146 (Miss. 1973), petitioner failed to comply with Rule 38, and such noncompliance could be sufficient grounds for dismissal. Nonetheless, the Court "considered petitioner's application on its merits", thus overlooking again a procedural nicety. 285 So.2d at 147.
Bell v. Watkins, 381 So.2d 118 (Miss. 1980), is an opinion on the merits. The Court "carefully and meticulously considered each allegation of the petitioner's complaint," some of these issues having been before the Court "no less than four times". 381 So.2d at 119. Despite res judicata options, the Court chose instead to find issues "lacking in merit". 381 So.2d at 119. That we are not the only ones to so read the Bell opinion is made evidence in Bell v. Wtakins, 692 F.2d 999, 1003-041 (5th Cir.1982).
Callahan v. State, 426 So.2d 801 (Miss. 1983) states a combination res judicata/deliberate by-pass rule. 426 So.2d at 803. First, the Court emphasizes that, "The writ of error coram nobis will not be allowed to relitigate questions of law or fact already decided by this Court [on direct appeal]. 426 So.2d at 803.
Second, the Court emphasizes that points may not be raised on post-conviction proceedings which were deliberately held back at the time of direct appeal. 426 So.2d at 803. Suffice it to say that there is nothing whatsoever in the Callahan opinion that precludes initial consideration, via petition for writ of error coram nobis, of constitutional questions unless there has been a deliberate by-pass. See my dissenting opinion in Hill v. State, 432 So.2d 427, 450, 451 (Miss. 1983).
[12] Concurring in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), Justice Stewart wrote:

The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity. 408 U.S. at 306, 92 S.Ct. at 3760, 33 L.Ed.2d at 388.
This theme, the unique nature of the death penalty, has been repeated time and time again. See, e.g., Furman v. Georgia, supra, 408 U.S. at 287-289, 92 S.Ct. at 2751, 3752, 33 L.Ed.2d 376-378 (Brennan, J., concurring); Gregg v. Georgia, 428 U.S. 153, 187-188, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976); Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976); Gardner v. Florida, 430 U.S. 349, 357-358, 97 S.Ct. 1197, 1204-05, 51 L.Ed.2d 393, 402 (1977); Coker v. Georgia, 433 U.S. 584, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977); Lockett v. Ohio, 438 U.S. 586, 604-605, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973, 989-990 (1978); Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392, 393, 403 (1980); and California v. Ramos, ___ U.S. ___, ___, 103 S.Ct. 3446, 3451, 77 L.Ed.2d 1171, 1179 (1983).
[13] The courts of the United States, led by the Supreme Court of the United States, have created an anomalous, if not absurd, posture for federal post-conviction litigation. If a state court adjudicates the merits of a substantive federal constitutional claim, then federal courts have full power to "review" the federal claim. In such instances, the state prisoner gets two separate adjudications on the merits of his federal constitutional claim  one in the state courts, the other in the federal courts. On the other hand, if the state court rejects the federal constitutional claim by reason of some procedural default of the prisoner, it is clear, at least in non-capital cases, that the federal courts will regard the state procedural bar as an independent and adequate state ground and, accordingly, refuse to hear the merits of the prisoner's substantive federal constitutional claim. See, e.g., Wainright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). If such a rule be applied in death penalty cases, then the defendant will be dispatched to the gas chamber without anyone ever having considered on the merits his federal constitutional claim.
[14] Jordan v. State, 365 So.2d 1198 (Miss. 1978)
[15] Washington v. State, 361 So.2d 61 (Miss. 1978)
[16] Voyles v. State, 362 So.2d 1236 (Miss. 1978)
[17] Bell v. State, 360 So.2d 1206 (Miss. 1978)
[18] Irving v. State, 361 So.2d 1360 (Miss. 1978)
[19] Jones v. State, 381 So.2d 983 (Miss. 1980)
[20] Reddix v. State, 381 So.2d 999 (Miss. 1980)
[21] See Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981); Jordan v. Watkins, 681 F.2d 1067 (5th Cir.1982), clarified sub nom. Jordan v. Thigpen, 688 F.2d 395 (5th Cir.1982); Bell v. Watkins, 692 F.2d 999 (5th Cir.1982); Voyles v. Watkins, 489 F. Supp. 901 (N.D.Miss. 1980); Irving v. Hargett, 518 F. Supp. 1127 (N.D.Miss. 1981); Reddix v. Thigpen, 554 F. Supp. 1212 (S.D.Miss. 1983); Jones v. Thigpen, 555 F. Supp. 870 (S.D.Miss. 1983). The one case left undisturbed by federal post-conviction review was that of Jimmy Lee Gray. See Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982)
[22] I am very much aware of the implications of what I write here for this Court and the workload shouldered by its members and staff. Death penalty cases have created serious institutional problems for courts, state and federal, around the country. They consume more time and sap more of our energies and emotions than any other type of case. Seemingly they never end. And their number is mounting. See Caldwell v. State, 443 So.2d 806, ___ (1983); Tokman v. State, 435 So.2d 664, 673 (Miss. 1983). Still when a man's life is at stake our oaths demand that we regard no burden too back-breaking to bear.